The issue presented by this case is whether the trial court erred in denying the defendant's motion for JNOV, or, in the alternative, for a new trial, where the court's judgment was based upon a jury verdict that the defendant alleges was inconsistent with the legal theories advanced by the plaintiff at trial. Because the verdict form used was a general one, and because there was evidence adduced from which the jury could have found liability based on one of the legal theories advanced by the plaintiff in his complaint, we affirm the judgment of the trial court.
Viewing the evidence in the light most favorable to the plaintiff, the jury could have found the following facts: In May 1987, Terry Bowen became ill. Because resting at home failed to help, Bowen's wife took him to the emergency room at Baptist Memorial Hospital ("Baptist") in Gadsden on May 12, 1987. Initially, Bowen was examined by Dr. Walter Conner. Dr. Conner, however, was called away and a Dr. Reiland completed Bowen's exam. *Page 76 
Drs. Conner and Reiland consulted upon Conner's return, and they diagnosed Bowen as having bronchitis. An antibiotic was prescribed and Bowen was sent home.
Two days later, on May 14, 1987, Bowen was no better. He returned to Baptist's emergency room and was admitted into the hospital for a preliminary examination. After a portion of this preliminary exam was completed, and after various tests were ordered, Dr. Shannon, the examining physician, was called away. There was evidence that Bowen was in excruciating pain and that he cried for a doctor. Another hospital employee checked on Bowen. Bowen showed this employee his May 12 prescription bottles and begged the employee for a doctor. The employee told Bowen that he would have to remain quiet and wait. Bowen became somewhat abusive, and an employee told him that he should leave the hospital if he did not like how it was run. It seems that hospital employees may have also made other belittling or derogatory remarks to Bowen. Bowen threw a styrofoam cup of ice he had in his hand against one of the examination room partitions. He then slid off the bed on which he was lying and began to leave the hospital. Bowen collapsed as he walked down the corridor. His wife assisted him to their automobile, and drove him to another Gadsden hospital. Bowen was later diagnosed as having spinal meningitis.
Bowen sued Baptist and Drs. Reiland, Conner, and Shannon, alleging that they had negligently misdiagnosed or failed to diagnose his spinal meningitis, and also alleging that they had constructively forced him to leave the hospital or had constructively abandoned him without warning him of the possible dangers of his leaving the hospital, and that they had acted negligently in doing so. Liability against Baptist, under both theories, was bottomed on the employer-employee relationship between the doctors and the hospital staff and Baptist. It was undisputed that Drs. Reiland, Conner, and Shannon were all paid employees of Baptist. At the time of the incident they were all interns paid to work in the emergency room.
After Bowen presented his case-in-chief, the court directed a verdict for Dr. Shannon, holding that he had no duty to diagnose because he had had too little time and information for a proper diagnosis. The case went to the jury against Dr. Reiland and Dr. Conner, and Baptist. The jury returned a verdict for Bowen against Baptist alone for $450,000. Baptist made a post-trial motion for JNOV, or, in the alternative, for a new trial or for a remittitur. After hearing arguments and reading the submissions, the court denied Baptist's motion. Baptist appealed.
Baptist argues on appeal that the trial court erred by denying its post-trial motion because the verdict form submitted to the jury, and a clarifying instruction given by the court, allowed the jury to render a verdict inconsistent with the legal theories espoused by Bowen at trial. Additionally or alternatively, Baptist contends that Bowen failed to substantiate his allegations of negligence.[1] We are unpersuaded by either argument, especially given our standard of review and the fact that the jury verdict was general rather than specific.
 Our Standard of Review
Initially, we note that we are dealing with a judgment rendered on a jury verdict. Jury verdicts, in Alabama, are presumed correct. Cloverleaf Plaza, Inc. v. Cooper Co.,565 So.2d 1147, 1149 (Ala. 1990). Further, "[u]pon the denial of a post-judgment motion for a new trial, this presumption is strengthened, 'and [a verdict] will not be set aside unless so contrary to the evidence as to convince this court that it is wrong and unjust.' " Id. Stated differently, this court will not reverse a judgment based on a jury verdict, unless the evidence, when viewed in a light *Page 77 
most favorable to the nonmovant, "is so preponderant against the verdict as to clearly indicate that it was plainly andpalpably wrong and unjust." Christiansen v. Hall,567 So.2d 1338, 1341 (Ala. 1990) (emphasis added).
A motion for JNOV is properly granted only when: 1) there is either (a) a complete absence of proof on a material issue of fact or (b) no factual controversy upon which reasonable people could differ; and 2) the movant is entitled to a judgment as a matter of law. Deaton, Inc. v. Burroughs, 456 So.2d 771, 773
(Ala. 1984). Furthermore, all reasonable inferences must be considered in a light most favorable to the nonmovant. Id.
Denying, and, to a more limited extent, granting, a motion for new trial is within the sound discretion of the trial court. See, Jawad v. Granade, 497 So.2d 471, 477 (Ala. 1986). Such a "ruling will not be disturbed by this Court unless some legal right is abused and the record plainly and palpably shows the trial judge to be in error." McDowell v. Key,557 So.2d 1243, 1246 (Ala. 1990).
In view of these standards, it would be most difficult for us to reverse the trial court's judgment, as Baptist asks us to do. From a review of the evidence presented, we cannot say that the trial court erred in denying Baptist's post-trial motion. We discuss Baptist's specific contentions of error more fully below.
 The Clarifying Jury Instruction
After the jury had been charged and had deliberated for a time in the jury room, the jury submitted a written request for clarification. A short discussion, on the record, ensued between the jury and the court. The court then instructed the jury:
 "All right, there is one area, and this — the hospital under the law, if you were to find that the hospital acted in some way on one of the visits where the doctors were not involved. I make reference to the May 14 visit. If you were to find that the hospital was some way negligent during that particular visit, then, you can find directly against the hospital. But, only on that particular time."
(Emphasis added.) Baptist argues that this instruction was improper because, Baptist says, it was inconsistent with any legal theory relied upon, or evidence adduced, by the plaintiff at trial. We cannot agree.
Bowen pleaded the negligence of the abusive hospital employees, as well as the doctors, in his complaint. Specifically, paragraphs six and seven of Bowen's complaint states:
 "On the second (2nd) occasion [referring to the May 14, 1987, visit] plaintiff after requesting immediate emergency assistance from defendant hospital and from the agent, servants or employees of the defendant hospital, was advised that if he did not like the way the hospital was being run he should go to another hospital.
 "As a result of this the plaintiff was caused to leave the defendant hospital in order to obtain medical help at another medical institution located in Gadsden, Etowah County, Alabama."
Further, at trial Bowen substantiated not only the events as pleaded, but also that such actions were a breach of the hospital's applicable standard of care which directly aided in causing his injuries. Specifically, Dr. Arthur Pedersen, the plaintiff's medical expert, testified that for the hospital staff to ask Bowen to leave without informing him of the dangers inherent in that action was a breach of the standard of care observed by the national health care community. Dr. Pascal Herrera, another medical expert testifying for the plaintiff, attested to causation and damages by stating, in essence, that any delay in treatment worsened Bowen's condition and caused irreparable damage.
Baptist also argues that the court's giving of the clarifying instruction was error because no written jury instructions were given to cover the principle enunciated in the clarifying instruction. It is true that each party is entitled to proper jury instructions, Nunn v. Whitworth, 545 So.2d 766, 767 (Ala. 1989), but the following is equally true: *Page 78 
 "In reviewing instructions to determine if they correctly set forth the applicable law, the Court must read and consider the charge as a whole. Grayco Resources, Inc. v. Poole, 500 So.2d 1030
(Ala. 1986). The refusal of a requested written charge is not error where the trial court's oral charge covered the principles stated in the requested charge. Rule 51, A.R.Civ.P.; McGehee v. Harris, 416 So.2d 729 (Ala. 1982)."
Standard Plan, Inc. v. Tucker, 582 So.2d 1024, 1033 (Ala. 1991). The trial court's oral charge, rather than the refused or granted written charges, is pivotal. An oral charge that, when viewed as a whole, adequately covers requested written instructions will survive attack on appellate review. Id. Logically, then, a trial court may refuse requested written charges, and not commit reversible error, as long as the oral charge adequately covers the same principles. Id.
In this case, Bowen asked for several jury instructions that addressed Baptist's potential liability for the May 14 visit. The trial court's refusal of some of these instructions was cured by the clarifying instruction. In short, the clarifying instruction properly placed before the jury the principle necessary for its finding of liability on Baptist's part: an agency relationship between the employees and Baptist. This instruction, along with the other oral instructions on duty, breach, etc., adequately guided the jury, and they support its finding of liability on Baptist's part for what happened during the May 14 visit.
 The Jury Verdict Form
Baptist also contends that the jury verdict form used was erroneous because it allowed the jury to impose liability against Baptist alone when, Baptist argues, no legal theory had been espoused that would allow this, and when, it also argues, insufficient evidence had been presented to support such a finding. We have previously noted that Bowen pleaded and substantiated his theory of "negligence on the part of the abusive employees." Additionally, because the verdict form was "general" rather than "specific" we cannot determine exactly why the jury found against Baptist alone. See, Alabama HospitalAss'n Trust v. Mutual Assurance Society, 538 So.2d 1209, 1216
(Ala. 1989). Under the evidence, the jury could have found that Baptist's employees (who are not defendants in this action) were negligent; and therefore, based on the doctrine of respondeat superior, could have found against Baptist. Such a finding would be based on the negligence of employees other than the defendants. Because of the general form of the verdict, and our standard of review as to jury verdicts, we find no reversible error here. Id.
Based on the foregoing, we affirm the judgment.[2]
AFFIRMED.
HORNSBY, C.J., and SHORES, HOUSTON and KENNEDY, JJ., concur.
[1] Baptist states the issues as: 1) was there causation shown between the acts of the hospital employee and Bowen's injuries? 2) is there any evidence of negligence on May 12 apart from the alleged negligence of Drs. Connor and Reiland? 3) was there any evidence of negligence on May 14 apart from the alleged negligence of Dr. Shannon? and 4) was the jury verdict unresponsive to the pleadings, evidence, and jury instructions?
[2] No argument was made on appeal that the verdict was excessive; therefore, that issue is not properly before us.